**HOLT v. WARREN.**

No. 3834.

United States Court of Appeals
Tenth Circuit.

Aug. 2, 1949.

Rehearing Denied Aug. 31, 1949.

John A. Johnson, Oklahoma City, Okl., for appellant.

O. B. Martin, Oklahoma City, Okl. (Andrew Fraley, Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The trial court decreed a cancellation of a lease on a theater building in Oklahoma City, and gave judgment on an accounting against the appellant, lessee, based upon a finding that he had not truthfully accounted to the appellee, lessor, for rentals accruing under the lease contract. The lease was for a primary period of five years from October 10, 1942, with the option in the lessee to extend it for an additional five year period upon written notice. It provided for a weekly rental, based upon a graduated percentage of the gross receipts from admissions, sale of popcorn and other commodities, and further pro-

vided that in the event the lessee defaulted in any of the terms of the lease contract, or was delinquent in the payment of the rent for a period of one week, the lessor might terminate the lease and take possession of the building without further notice.

At least thirty days before the expiration of the primary term of the lease, the lessee advised the lessor in writing of his intention to exercise his option to extend it. Whereupon the lessor replied that because the lessee had not made an honest and truthful accounting for rentals due under the lease, it would be terminated at the end of the primary term, or October 10, 1947. When the lessee refused to vacate, this suit was brought for cancellation and an accounting for the unpaid rentals alleged to amount to $60.00 per month during the five year period, in the total sum of $3,600.00.

Upon a trial of the case without a jury, the court found from evidence of doubtful but of some probative value, that the lessee had breached the contract by failing to account for and pay over to the lessor all rentals due him as provided in the lease agreement, and the lessor was therefore entitled to terminate the lease and take possession of the premises without further notice. Specifically, the court found that the lessee had defrauded the lessor by failing to keep a correct record of all admission tickets sold to customers entering the theater; had resold the same tickets to other customers by having the ticket taker return them to the ticket seller for resale, and in this manner had defrauded the lessor in the sum of $143.00, for which judgment was rendered.

On appeal, the appellant attacks the sufficiency of the testimony upon which the court's findings of fraud are based. Without recounting the details, it seems sufficient to say that having due regard for the prerogative of the trial court as the trier of the facts, its findings are not clearly erroneous.

The appellant pleaded waiver and estoppel to assert forfeiture, on the theory that the continued acceptance of rents, with full knowledge of the facts upon which it relied to establish fraud, amounted

to waiver. The court found that although the lessor continued to accept tendered rentals, he did so without any intention of waiving his right to assert a breach of the contract, and therefore did not do so.

The trial court's finding of fraud is based primarily upon the testimony of a checker, hired by the lessor, to check the theater. His testimony was to the effect that he checked the theater from April until August 1946. After he had stood in the lobby checking the admissions for a week, he was refused further admittance to the lobby by the lessee, and thereafter checked the admissions from a vantage point outside the theater. He purported to have recorded the number of people admitted to the theater in excess of paid admissions as shown by the tickets sold. He also testified concerning the collection of admissions without the issuance of tickets after the box office was closed. There was testimony by other witnesses, generally to the effect that persons were admitted to the theater without the issuance of tickets; that tickets were resold, and that more popcorn was sold than was reflected in the rental returns.

The lessor testified that he first suspected that the lessee was not rendering an honest account of the receipts under the lease contract early in 1945; that his suspicions were generated by the fluctuations of the rent during the weeks he was in town, and when he was out of town. He testified that he asked to see the books in March 1945, but was refused because they were in the office of an attorney while income tax returns were being prepared. He stood in the theater with the checker in the early part of 1946 to check the number of admissions against the number of tickets sold, but was unable to find any discrepancy.

The lessor did not ask to examine the books after 1945; the theater was not checked after August 1946, and there was no creditable evidence of defalcation after that time. From November 1946 to August 1, 1947, the theater was managed by Eleven Moore for the lessee under an arrangement for a percentage of the receipts. During this time neither the lessee nor his

wife exercised any control over the theater, and the lessor continued to receive the weekly rentals as tendered without complaint, until the lessee indicated in writing his election to extend the lease under his option.

■ Generally, it is held on equitable principles that the continued acceptance of rent, with full knowledge of the breach of the conditions of a rental contract, constitutes waiver of the right to assert forfeiture. Waukegan Times Theatre Corp. v. Conrad, 324 Ill.App. 622, 59 N.E.2d 308; Title Ins. & Trust Co. v. Hisey, 9 Cir., 95 F.2d 555; Extension Oil Co. v. Richfield Oil Corp., 52 Cal.App.2d 105, 125 P.2d 895; Harris v. Ware, Tex.Civ.App., 93 S.W.2d 598; Oastler v. Wright, 201 Ga. 649, 40 S.E.2d 531; Keating v. Preston, 42 Cal. App.2d 110, 108 P.2d 479; Markey v. Smith, 301 Mass. 64, 16 N.E.2d 20, 118 A. L.R. 274; Klein v. Longo, D.C.Mun.App., 34 A.2d 359; see Annot. 109 A.L.R. 1267; 32 Amer.Juris., Sections 848, 882 and 883; 51 C.J.S., Landlord and Tenant, § 117; 12 C.J.S., Cancellation of Instruments, § 38. Waiver is one of equity's answers to an odious forfeiture. As applied here, it is more accurately called acquiescence or election. See Williston on Contracts, Rev. Ed., Vol. 3, Sections 679, 687 and 688.

■■ It is one thing, however, to waive a mere nonpayment of rent or some other technical breach, as in the cited cases supporting the rule. It is quite another thing to condone a fraudulent breach for equitable reasons. The same equitable considerations which support waiver of the right to cancel also sanction the power of a court of equity to decree a cancellation for vitiating fraud. Shell Petroleum Corp. v. Gowan, 240 Ala. 497, 199 So. 849; Blue Ridge Metal Mfg. Co. v. Proctor, 327 Pa. 424, 194 A. 559; 12 C.J.S. Cancellation of Instruments, § 38. Moreover, the land-

lord does not waive fraud of which he does not have positive knowledge. Nor does equity penalize him for patience and forbearance to declare a forfeiture based upon a fraudulent breach; it does not require him to act on current suspicion and rumor. Pence v. Langdon, 99 U.S. 578, 25 L.Ed. 420; Hoyt v. Latham, 143 U.S. 553, 567, 12 S.Ct. 568, 36 L.Ed. 259; Hart v. Adair, 9 Cir., 244 F. 897.

■ The lessor suspected the lessee in 1945, but he had no positive proof Through his diligence, he gathered proof in 1946, but as we have observed, it was not conclusive. He had no other proof in August of 1947, when he declared a cancellation, but he was entitled to invoke the jurisdiction of a court of equity to test the sufficiency of the available proof to support his equitable right to cancellation. In the trial of the case, all available and relevant facts were submitted to the trial court. A deputy collector of internal revenue testified concerning admission tax deficiencies assessed and paid by the lessee, but the lessee was not permitted to cross-examine him concerning the basis for the deficiencies, and we therefore do not regard his testimony as competent proof. But apart from this testimony, we cannot say that the evidence was wholly insufficient to support the court's finding of fraud, and when judged by the conduct of lessor, see Lucas Hunt Village Co. v. Klein, Mo.App., 212 S.W.2d 480, we are unable to say that he intended to waive the fraudulent breach.

In sum, we have affirmed the finding of fraud as resting upon evidence of some probative value, and in the face of that finding, we cannot say that lessor, with full knowledge of it, intentionally waived his right to assert it when the lessee elected to exercise his option to extend the lease. The judgment is therefore affirmed.