## NATIONAL LABOR RELATIONS BOARD v. SCHWARTZ.

### No. 11124.

Circuit Court of Appeals, Fifth Circuit.

Jan. 20, 1945.

As Amended on Denial of Rehearing
Feb. 22, 1945.

Alvin J. Rockwell, Gen. Counsel, National Labor Relations Board, and Malcolm F. Halliday, Associate Gen. Counsel, National Labor Relations Board, both of Washington, D. C., and LeRoy. Marceau, Regional Atty., National Labor Relations Board, of New Orleans, La., for petitioner.

Emil Corenbleth, of Dallas, Tex., for respondent.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

Having found that the Respondent discharged employee Leona Presley because of her union activities and because she was organizing a movement among the employees to secure overtime work, and that a discharge for the latter reason also discourages membership in a labor union, and having ordered the Respondent to cease and desist the labor practices that were adjudged to be unfair and to offer reinstatement to Leona Presley and to make her whole for any loss of pay that she may have suffered by reason of her discharge, the Board now petitions this Court to enforce said order.

It is undisputed that the discharged employee had procured and made available to a number of the employees of the Respondent application cards for membership

in the union, and that certain employees, including the discharged employee, had signed such application cards, and that they had been returned to the union.

There is substantial and convincing evidence that the forelady of the Respondent, believing that the discharged employee was circulating cards, or a petition, to present to the company for the allowance of additional overtime work, discharged Mrs. Presley for that reason. The Board, however, found that the forelady discharged her for her union activities. It is true that the cards which she aided in circulating were applications for membership in the union, but the evidence shows that the forelady evidently had mistaken the purpose of the cards and believed they were part of an effort to secure overtime work for the employees. There is no proof whatever that Mrs. Norris, the forelady, knew that the cards were for membership in the union. The testimony as to the statements of the forelady on the reason for the discharge justifies the inference that the forelady believed that the cards were part of a movement to obtain additional overtime as well as the conclusion that this was the real reason for the employee's discharge rather than her inefficiency.

A careful search of the record fails to reveal any evidence tending to show that Mrs. Norris knew that the cards were applications for membership in the union, and there is no evidence in the record to support the finding that Mrs. Presley was fired for her union activities. But the absence of this proof will be of no avail to the Respondent, for the evidence is quite substantial that Mrs. Presley was discharged for her activities in furtherance of an effort to get additional pay for the employees through the medium of overtime work. Under Sec. 7 of the Act 29 U.S.C.A. § 157, the employees have a right "to engage in concerted activities, for the purpose of collective bargaining or *other mutual aid or protection*." (Emphasis added.) Under the Act the employees had the right to sign cards or to petition for overtime work, and to thus engage in concerted activities for their mutual aid. To restrain or coerce the employees in the exercise of that right, as guaranteed in Sec. 7, is by Sec. 8, 29 U.S.C.A. § 158, made an unfair labor practice.

Contrary to a rather general misconception, the National Labor Relations Act was passed for the primary benefit of the employees as distinguished from the primary benefit to labor unions, and the prohibition of unfair labor practices designed by an employer to prevent the free exercise by employees of their wishes in reference to becoming members of a union was intended by Congress as a grant of rights to the *employees* rather than as a grant of power to the union. Consequently the right of employees lawfully to engage in concerted activities for the purpose of mutual aid, outside of 'a union, is specified by the Act.

Although the order of the Board is without support in the evidence as to the finding that the employee was discharged for union activity, there is abundant evidence to show that the employee was discharged for what the forelady believed to be the engaging in concerted activities for the mutual aid of the employees in seeking additional overtime, and since this is also within the condemnation of the Act as unfair labor practice, although not as an act to discourage membership in a labor union, the order of the Board will be enforced, upon appropriate amendment to conform to the conclusions herein expressed.