JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* SALVADOR MORALES, h.n.c. VAQUERÍA FELÍCITA, demandada.

*Número:* JRT-63-6    *Resuelto:* 21 de enero de 1964

*J. B. Fernández Badillo, Procurador General, José Orlando Grau,
Luis Rivera Pérez,* y *Rafael J. Vázquez Colón,* abogados de la
peticionaria; *Martín Avilés Bracero,* y *Alfredo Álvarez Linares,* abogados de la demandada.

Sala integrada por el Juez Presidente Señor Negrón Fernández y
los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

El Art. 4 de la Ley de Relaciones del Trabajo de Puerto Rico (29 L.P.R.A. sec. 65), dispone que los empleados tienen derecho a "dedicarse a actividades concertadas con el propósito de negociar colectivamente *u otro fin de ayuda o protección mutua*". (Énfasis nuestro.) El Art. 8(1)(a) de dicha ley (29 L.P.R.A. sec. 69(1)(a)) dispone que es una práctica ilícita de trabajo el que un patrono intervenga, restrinja, ejerza coerción o intente intervenir, restringir, o ejercer coerción con sus empleados en el ejercicio de tales derechos. La actividad concertada no está limitada al campo de la negociación colectiva, sino que puede tener otros y distintos propósitos tales como querellarse de las condiciones del lugar del trabajo,[1] protestar o abandonar el trabajo debido al despido o maltrato de otro empleado,[2] gestionar el reemplazo de un empleado ineficiente o querellarse de la inexperiencia de un superior,[3] quejarse por razón de salarios inadecuados[4] y solicitar discutir la negativa a pagar el bono de Navidad.[5]. Como es de suponer, la actividad concertada protegida no puede constituir un acto ilegal[6], ni violento[7] ni en violación de convenio,[8] ni ser indefendible por cons-

---

[1] *Labor Bd.* v. *Washington Aluminum Co.,* 370 U.S. 9 (1962); *N.R.L.B.* v. *Southern Silk Mills,* 209 F.2d 155 (6th Cir. 1953); *Carter Carburetor Corp.* v. *N.L.R.B.,* 140 F.2d 714 (8th Cir. 1944).

[2] *N.L.R.B.* v. *J. I. Case Co., Etc.,* 198 F.2d 919 (8th Cir. 1952); *N.L.R.B.* v. *Globe Wireless,* 193 F.2d 748 (9th Cir. 1951); *N.L.R.B.* v. *Peter C. K. Swiss Choc. Co.,* 130 F.2d 503 (2d Cir. 1942).

[3] *N.L.R.B.* v. *Phoenix Mut. L. Ins. Co.,* 167 F.2d 983 (7th Cir. 1948); *N.L.R.B.* v. *Guernsey Muskingum Electric Co-op. Inc.,* 285 F.2d 8 (6th Cir. 1960); *N.L.R.B.* v. *Schwartz,* 146 F.2d 773 (5th Cir. 1945).

[4] *N.L.R.B.* v. *Tex-Togs, Inc.,* 231 F.2d 310 (5th Cir. 1956); *N.L.R.B.* v. *Kennametal, Inc.,* 182 F.2d 817 (3d Cir. 1950); *Gullett Gin Co.* v. *N.L.R.B.,* 179 F.2d 499 (5th Cir. 1950).

[5] *Modern Motors* v. *N.L.R.B.,* 198 F.2d 925 (8th Cir. 1952).

[6] *Southern S.S. Co.* v. *Labor Board,* 316 U.S. 31 (1942); *N.L.R.B.* v. *Dallas General Drivers, Etc., Local No. 745,* 264 F.2d 642 (5th Cir. 1959).

[7] *Labor Board* v. *Fansteel Corp.,* 306 U.S. 240 (1939).

[8] *Labor Board* v. *Sands Mfg. Co.,* 306 U.S. 332 (1939).

tituir una deslealtad al patrono que es innecesaria con el fin de llevar a cabo actividades concertadas legítimas, (⁹) ni consistir de imputaciones incorrectas hechas deliberadamente o con intención de falsificar o maliciosamente perjudicar al patrono, o difamatorias, insultantes o manifiestamente destructivas de la disciplina. (¹⁰) La intervención, restricción o coerción a que se refiere el Art. 8 (1) (a) de la referida ley puede consistir en el despido del empleado como ocurrió en muchos de los casos previamente citados, o en otro acto discriminatorio en su contra, como por ejemplo, la imposición de deméritos, el no darle trabajo durante horas extras, el cambiar a un empleado de un turno de día a otro de noche que era menos deseable, así como la suspensión temporera de empleo. (¹¹) La acción concertada a que se refiere la ley en cuestión debe realizarse por uno o más empleados a nombre y en beneficio de más de uno de un grupo de empleados (¹²) del cual él o los querellantes forman parte. El hecho que la querella sea motivada por un espíritu de represalia contra el patrono, siempre que de hecho sea de beneficio mutuo de los empleados, o que de la investigación subsiguiente resulte que no tenía fundamento no implica que deba considerarse fuera del ámbito protector de la Ley de Relaciones del Trabajo a menos que se demuestre, cosa que no se hizo en este caso, que la actividad además participa de la naturaleza que previamente apuntamos que la proscribe y la excluye de la referida protección, de acuerdo con los casos de *Southern S.S. Co.,* supra; *Fansteel Coporation,* supra; *Sands Mfg. Co.,* supra; *Electrical Workers,* supra; *Walls*

---

(⁹) *Labor Board* v. *Electrical Workers,* 346 U.S. 464 (1953).

(¹⁰) *Walls Mfg. Company, Inc.,* 137 N.L.R.B. 1317 (1962).

(¹¹) *Oklahoma Transp. Co.* v. *N.L.R.B.,* 136 F.2d 42 (5th Cir. 1943); *J. A. Utley Company* v. *N.L.R.B.,* 217 F.2d 885 (6th Cir. 1954); *Texarkana Bus Co.* v. *N.L.R.B.,* 119 F.2d 480 (8th Cir. 1941); *N.L.R.B.* v. *Kearney & Trecker Corp.,* 237 F.2d 416 (7th Cir. 1956).

(¹²) *Office Employees Int. U.* v. *Houston Lighting & P. Co.,* 314 S.W.2d 315 (Tex. 1958); *The Ohio Oil Company,* 92 N.L.R.B. 1597 (1951); *Panadería Sucesión Alonso,* 87 N.L.R.B. 877 (1949); Scurlock, *Pre-Emption in Labor Relations,* 35 Texas L. Rev. 555, 557 (1957).

*Mfg. Co.*, supra. Es inmaterial que el patrono creyera de buena fe, cuando discriminó contra el empleado, que éste no realizaba una actividad concertada a que hace referencia el estatuto previamente citado. *N.L.R.B.* v. *Industrial Cotton Mills*, 208 F.2d 87, 91 (4th Cir. 1953) ; *N.L.R.B.* v. *Don Juan Co.*, 185 F.2d 393 (2d Cir. 1950).

En el caso ante nos, a base de un cargo radicado por el Sindicato de Obreros Unidos del Sur de Puerto Rico, la Junta de Relaciones del Trabajo de Puerto Rico, aquí peticionaria, expidió una querella contra el demandado Salvador Morales, imputándole haber violado las disposiciones de la Ley de Relaciones del Trabajo, previamente citadas, al despedir a sus empleados Félix Rivera Viera y Cesáreo Rivera Santiago por haber participado en actividades concertadas *"consistentes en haber reclamado ante los oficiales del Dept. del Trabajo que el querellado les pagara determinado número de horas extras."* (Énfasis nuestro.) Las conclusiones de hecho del Oficial Examinador confirmadas por la Junta Peticionaria, informan que con motivo de sufrir lesiones una novilla en la vaquería del demandado, el mayordomo del establo José Antonio Casiano increpó duramente a un grupo de trabajadores entre los cuales se encontraban Félix Rivera Viera y Cesáreo Rivera Santiago y que con motivo de dicho incidente estos dos empleados fueron inmediatamente a la oficina de Guayama del Departamento del Trabajo y radicaron una querella contra el patrono demandado por concepto de horas extras, trabajo realizado en séptimo día y diferencias en salarios. La prueba además demuestra que dicha querella se hizo exclusivamente a nombre de los dos querellantes para beneficio mutuo. El mismo día éstos hablaron con sus compañeros para que les dieran su firma en un papel de libreta para poder reclamar horas extras a nombre de todos. Unos firmaron, otros no. Más tarde, al recibir del demandado el "reporte" del Departamento del Trabajo, presumiblemente la citación para comparecer a una vista en relación con la

querella por horas extras, el demandado recriminó a los dos empleados por tal actuación. Luego de la vista, durante la cual el patrono comprobó haber pagado los séptimos días trabajados por los querellantes, y a la cual comparecieron el demandado, los dos querellantes y un testigo que no era de los firmantes del papel, el querellado dejó cesante a los dos empleados del trabajo como concluye el Oficial Examinador, o pretendió cambiar su tarea ofreciéndoles trabajo en el corte de yerba que era menos beneficioso para ellos, en lugar de la faena de ordeñadores que hasta entonces desempeñaban, debido a las alegadas diferencias con el mayordomo y con el encargado del establo. El Departamento del Trabajo no dio curso a la referida querella por compensación por trabajo durante horas extras debido a que los querellantes no aportaron la prueba que se les requirió para sostenerla. La Junta concluyó que el demandado incurrió en una práctica ilícita del trabajo al discriminar contra Félix y Cesáreo Rivera en la forma previamente relacionada por haber llevado a cabo una actividad concertada consistente en radicar querella contra el demandado por salarios que éste dejó de pagar *a ellos y a otros empleados* por trabajo realizado durante horas extras y en séptimos días; que·cuando los referidos dos empleados acudieron al Departamento del Trabajo a radicar dicha querella *"actuaban en beneficio del grupo"*. (Énfasis nuestro.) Advertimos desde ahora que la prueba no demuestra que en el momento o antes de discriminar contra los dos empleados en cuestión, el demandado tuviera conocimiento de la gestión que los dos empleados realizaban "en beneficio del grupo" o que hubiera podido inferir que así fuese de las circunstancias o de la situación prevaleciente en el lugar del empleo. Como resultado de la conclusión de la Junta antes relacionada, ésta ordenó al demandado a reponer a los dos empleados y a compensarles los salarios dejados de devengar, más intereses y a fijar los avisos de rigor.

Solicita la Junta que dictemos un decreto poniendo en vigor la referida orden en su totalidad. El demandado arguye que se debe dejar la misma sin efecto porque la actividad que llevaron a cabo los dos empleados, por la cual fueron despedidos o perjudicados en su empleo, fue una reclamación por salarios que cada uno radicó ante el Departamento del Trabajo en beneficio puramente personal.

En apoyo de la conclusión de la Junta, se cita el caso de *Salt River Val. W. User's Ass'n.* v. *N.L.R.B.*, 206 F.2d 325 (9th Cir. 1953), en el cual un grupo de empleados quejosos de las condicciones de trabajo y paga, y no contentos con el progreso realizado por la unión, escogieron a un empleado del grupo para que circulase una petición entre ellos, dándole poder para reclamar sus salarios por la vía judicial. Se resolvió que el despido del empleado era improcedente. En este caso no se levantó la cuestión de conocimiento del patrono, pero la prueba indicaba que el patrono tuvo algún indicio de la actividad, pues tenía conocimiento de que se estaba molestando a los empleados.

Creemos que el previo conocimiento de la actividad concertada por parte del patrono es un ingrediente indispensable para que su acción discriminatoria contra el empleado constituya una práctica ilícita del trabajo. En *N.L.R.B.* v. *Office Towel Supply Co.*, 201 F.2d 838 (2d Cir. 1953), se resolvió que los comentarios de un empleado, que de otro modo justifican su despido, pueden constituir parte de una actividad concertada de manera que el despido resulte ilegal, *siempre y cuando que en el momento del despido el patrono tenga conocimiento de que la declaración es parte de tal actividad. Office Employees Int. U.*, supra, escolio 12. En *International Ladies' Garment Workers U.* v. *N.L.R.B.* 299 F.2d 114 (D.C. Cir. 1962), y en la continuación del mismo caso en *Walls Manufacturing Co. Inc.*, supra, escolio 10, se consideró el requisito de conocimiento de la actividad concertada por parte del patrono, pero se llegó a la conclusión de que en el

momento de su cesantía el empleado había informado al patrono que actuaba a nombre de otros. A nuestro juicio, la Ley de Relaciones del Trabajo no tiene por propósito imponer obligaciones bajo circunstancias o situaciones desconocidas por la parte afectada ni el de interferir con su derecho a dejar cesante o de otro modo afectar las condiciones de trabajo de sus empleados, excepto en los extremos provistos en los convenios colectivos, en el caso de actividades protegidas por los Arts. 4 y 8 de dicha ley y en otros casos provistos por ley, como por ejemplo, con respecto a compensación en caso de despido sin justa causa, la forma y manera de pagar salarios, y con respecto a penalidades por discrimen ejercido por el patrono contra un empleado porque éste se haya querellado o haya ofrecido o prestado o se disponga a ofrecer o a prestar testimonio en alguna investigación, querella, reclamación, audiencia o procedimiento en relación con lo dispuesto en la legislación con respecto a salario mínimo. (29 L.P.R.A. secs. 180, 171–191 y 245w). Cf. *Limardo Costa* v. *Eastern Sugar Associates*, 84 D.P.R. 269 (1961); *Berríos* v. *Eastern Sugar Associates*, 85 D.P.R. 119 (1962). El imponerle responsabilidad al patrono bajo la Ley de Relaciones del Trabajo por discriminar contra uno o más de sus empleados que realizan actividades concertadas cuando en el momento de ejercer el alegado acto discriminatorio el patrono no tiene conocimiento de la actividad ni puede inferir su existencia de las circunstancias o de la situación prevaleciente en el lugar del empleo, constituiría una situación tan perjudicial y onerosa para el patrono que podría impedir a éste mantener la disciplina y el orden en su negocio que son parte indispensable de la buena administración en toda empresa agrícola, mercantil, manufacturera, de servicios o de otra naturaleza. *Joanna Cotton Mills Co.* v. *N.L.R.B.*, 176 F.2d 479 (4th Cir. 1949). Concluimos, por lo tanto, que el demandado no incurrió en una práctica ilícita del trabajo bajo las circunstancias pre-

cedentes y que por lo tanto la Junta incurrió en error en su conclusión a ese efecto. ([13])

■ La Junta, sin embargo, confirmó además la conclusión del Oficial Examinador de que al realizar gestiones ante el Departamento del Trabajo para recobrar del demandado compensación por horas extras y séptimos días trabajados, "*Félix Rivera y Cesáreo Rivera participaron en una actividad concertada para protección, ayuda y beneficio de ambos*". (Énfasis nuestro.) Un examen del récord demuestra que hubo prueba suficiente para sostener esta determinación. La actuación conjunta de dos empleados puede constituir una actividad concertada cubierta por la referida ley. *Office Employees Int. U.*, supra; *The Ohio Oil Company*, supra; *Panadería Sucesión Alonso*, supra; Scurlock, *Pre-Emption in Labor Relations*, supra. (Véase escolio 12.) En el momento de proceder en contra de los dos empleados, el demandado conocía de la antes mencionada gestión conjunta, o sea, estaba informado de los hechos y circunstancias que en efecto constituían una de las actividades concertadas a que se refiere la ley. Por esta razón se justifica que pongamos en vigor la orden de la Junta.

*Se dictará sentencia poniendo en vigor la orden de la Junta de Relaciones del Trabajo, Núm. D 307, de 24 de enero de 1963, en la forma en que se transcribe en la Sentencia.*

---

([13]) Sobre otra posible responsabilidad del patrono en un caso como éste, véase el Art. 18 de la Ley Núm. 379 de 15 de mayo de 1948, según ha sido enmendado. (29 L.P.R.A. sec. 287.)